# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHARLES GREENHILL and AMPHIB, INC., | |
| Plaintiffs, | Case No. 15-cv-09585 |
| v. | Judge John Robert Blakey |
| RICHARD M. VARTANIAN and PLATINUM FIGHTER SALES, INC., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This matter addresses the disputed ownership of a vintage World War II-era fighter plane currently held by Plaintiff Charles Greenhill and claimed by Defendant Richard Vartanian. Plaintiff purchased the plane in 1998 from Wilbur Martin. Defendant claims that Martin obtained the plane unlawfully in or around 1984, and that Defendant is its rightful owner. In 2014, Defendant demanded that Plaintiff return the plane; in October 2015, Plaintiff filed this diversity suit, seeking a declaratory judgment establishing his clear title to the plane. [1]. Defendant filed counterclaims for conversion and declaratory judgment in favor of his title to the plane. [14].

Before this Court is Plaintiff's motion for summary judgment on the grounds that Defendant's counterclaims are time-barred. [54]. For the reasons explained below, this Court agrees. Accordingly, Plaintiff's motion for summary judgment is granted.

I.   **Background**

The plane at issue in this case is a P-51D Mustang, a World War II-era fighter plane. PSOF ¶ 1; [55-7] at 1.[1] The plane is currently in Plaintiff's possession, bearing the name Geraldine, the serial number (s/n) 44-63655, and the U.S. registration number (N number) 5500S. DSOF ¶¶ 33, 37; [1-1] at 4; [55-8]. Plaintiff, through his corporation Amphib, purchased the plane from Wilbur Martin, through Martin's corporation Wings & Wheels, in 1998. PSOF ¶ 1; [55-8]. Plaintiff has invested significant resources restoring the plane to flight condition, and now maintains the plane in Amphib's hangar in Kenosha, Wisconsin. [55-5] at 14; [55-2] at 22; [55-9]; DSOF ¶ 37.

According to Defendant, however, Plaintiff's plane is in reality a different Mustang aircraft, one that Martin stole from Defendant in or around 1984. [64] at 3–4. Defendant bought his plane in 1965 from a seller in upstate New York. PSOF ¶ 31; DSOF ¶ 1. This plane (the New York plane) was once flown by the Royal Canadian Air Force (RCAF); after it was surplussed in 1950, its new civilian owners in New York registered it with the Federal Aviation Administration (FAA) under s/n 44-74543. DSOF ¶¶ 3–6. After Defendant purchased the New York plane in 1965, he stored it at a car dealership in Brewerton, New York, for about a decade. *Id.* ¶ 8. Around 1974, Defendant arranged to move the plane to a hangar at Fulton County Airport, in Fulton County, New York. *Id.* ¶ 9. During this time, Defendant

---

[1] The facts are taken from the parties' Local Rule 56.1 statements. "DSOF" refers to Defendant's statement of undisputed facts [65], with Plaintiff's responses [69] cited as "R. DSOF." "PSOF" refers to Plaintiff's statement of undisputed facts [56], with Defendant's responses [65] cited as "R. PSOF." References to additional filings are by docket number.

remained at his California residence; the purchase of the New York plane and its subsequent relocation were executed by Waterman Brown, an associate of Defendant's who dealt in "warbirds," or vintage military aircraft. DSOF ¶¶ 9–10; [55-1] at 10–11, 16. The New York plane remained in the Fulton County Airport hangar for another decade. DSOF ¶¶ 9, 12.

In early 1985, Defendant wanted to bring the New York plane out to California, but, upon inquiry, discovered that it was no longer at Fulton County Airport. [55-1] at 23–24; [55-6] ¶ 9. According to Brown, Wilbur Martin—a vintage plane enthusiast and dealer based in Illinois—had taken the plane with the intention of restoring it. [55-1] at 24. Defendant knew Martin because he had previously bought other vintage planes from Martin and his brother, so he knew that Martin was based in Palos Park, Illinois. [55-1] at 24, 26; [55-6] at ¶ 9. Defendant demanded the plane's return and by April 1985, with the plane still in Martin's possession, grew concerned that his plane had been stolen. [55-1] at 30. He retained Bob Guilford, his local lawyer, in relation to the theft, and was in contact with a lawyer in Chicago who made initial inquiries into Martin's business. PSOF ¶¶ 4–7; R. PSOF ¶ 9; [55-1] at 27, 29–30; [55-10]. Guilford was also in touch with Martin's lawyer, James Swanson. PSOF ¶¶ 10–11; [55-10].

In 1985, Defendant contacted the FAA, the Federal Bureau of Investigation, and law enforcement agencies in Los Angeles, New York, and Chicago about the theft of his plane. R. PSOF ¶ 15. According to Martin's 2016 deposition, the FBI contacted him in Palos Park but did not pursue the matter once Martin provided

3

proof of his purchase of airplane parts from Waterman Brown. PSOF ¶ 16; [66-4] at 18–19. Martin stated in his deposition that all he acquired from Brown were disassembled parts, some of which he used when restoring the plane that is now in Plaintiff's possession. [66-2] at 15; [66-4] at 21–22. In any event, the FBI apparently ceased any investigation, and neither Defendant, nor Guilford on his behalf, pursued the matter further at that time. R. PSOF ¶ 14.

With the New York plane, or parts of it, in Martin's possession, Martin registered an aircraft with the FAA under s/n 44-63655—the serial number attached to the plane at issue here. PSOF ¶ 33; [55-4] 9–10; [66-22]; [66-24] at 8. The exact origin of the s/n 44-63655 serial number remains in dispute. That number was originally attached to a P-51D Mustang that Martin, by his own admission, crashed in Nicaragua in 1965, after which the number was retired. DSOF ¶ 17-18; [66-21]; [66-2] at 11, 15. Defendant alleges that Martin revived that serial number to disguise the New York plane's identity and cover up its theft. DSOF ¶¶ 12–18. In any event, a plane with s/n 44-63655—allegedly containing either all or parts of Defendant's New York plane—remained in Martin's possession until he sold it to Plaintiff in 1998. [66-22].

Based upon Martin's deposition, Plaintiff contends that the composition of his plane includes parts from both the New York plane and the plane downed in Nicaragua, retrieved by Martin and reassembled in Palos Park. PSOF ¶ 33; [55-2] at 5–6; [55-4] at 9–10, 12; [66-4] at 21–22. According to Martin, using the crashed

4

plane's serial number was simply a convenient way to get the reassembled, hybrid plane a new FAA registration number. [66-4] at 21–22.

In 2002 or 2003, Defendant read an article in *Air Classics* magazine about Plaintiff's P-51D Mustang, newly christened Geraldine. [55-1] at 40. The article (apparently erroneously) identified the plane as s/n 44-74543—the serial number of Defendant's New York plane—and mentioned Defendant as a former owner, as well as the plane's history in the RCAF. [55-11] at 3–4. It described Plaintiff's purchase of the plane from Martin and its subsequent restoration, and noted the plane's location in Kenosha, Wisconsin. *Id*.

In 2004, Defendant's lawyer Bob Guilford introduced him to another lawyer—David Bonar—who was "interested in the matter" of the purloined P-51. PSOF ¶ 21; R. PSOF ¶ 21. In 2004, Bonar ordered the FAA file on Plaintiff's plane, which included information on the 1998 sale from Martin. PSOF ¶ 22. Bonar and Defendant "discussed the situation," and Bonar prepared a complaint against Plaintiff, Martin, and others, naming Defendant as the plaintiff. *Id*. ¶ 23–24; [55-13]. Only the first page of that complaint still exists; it lists claims for conversion, fraud, defamation, and quiet title. [55-13]; PSOF ¶ 24. Bonar died in December 2004, and no lawsuit was ever filed. PSOF ¶ 26–27.

In March 2009, Defendant wrote to then-U.S. Attorney for the Northern District of Illinois Patrick Fitzgerald about the theft of his P-51. R. PSOF ¶ 28–29; [55-15]. Defendant described the theft of the New York plane from its hangar in 1984; Martin's alleged scheme to disguise the New York plane (s/n 44-74543) by

5

using the serial number of the P-51 Martin destroyed in Nicaragua (s/n 44-63655); and the sale of the plane now labeled s/n 44-63655 to Plaintiff. [55-15]. To support his claims, Defendant attached FAA registration documents and information on the destruction of the original 44-63655 plane. *See id*. Fitzgerald replied in April, telling Defendant that his letter "does not form the basis for any action by the United States Attorney's Office at this time," but encouraging him to contact the FAA, a private attorney, or a private investigator. [55-16]. Defendant took no legal action at that time. *See* DSOF ¶¶ 27–28; [64] at 6.

In 2013, Defendant picked up another thread of his investigation. He learned from historian Leif Hellstrom that s/n 44-63655 had never been flown by either the Swedish or Canadian air forces—unlike s/n 44-74543, once flown by the RCAF—and that there were purported flaws in the serial numbers listed for various planes that Martin owned. [66-60] ¶ 16; [66-35]; [66-37]. Defendant learned that Martin transferred s/n 44-63655 to his corporation Wings & Wheels under the auspices of another corporation that had already been dissolved. [66-60] ¶ 18. Defendant obtained a letter from the U.S. Department of the Air Force describing the American origins of s/n 44-63655 up to its disposal as surplus in 1954. [66-15]. Finally, in 2013 Defendant read a copy of Martin's book, *So I Bought an Air Force*, which contains pictures of the P-51D Mustang that Martin crashed in Nicaragua. [66-60] ¶ 19; [66-59].

In February 2014, Defendant sent a missive with his allegations to Martin, Plaintiff, and a host of political and administrative officials. [55-20]. At this time,

6

Defendant made his first demand that Plaintiff turn over the plane. R. PSOF ¶ 36. In October 2015, Plaintiff filed this suit, seeking a declaration that the plane belongs to him free of any claim raised by Defendant. PSOF ¶¶ 37–38.

## II. Legal Standard

A motion for summary judgment can be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The motion will be granted only if, viewing the record in the light most favorable to the nonmoving party, no jury could reasonably find in the nonmoving party's favor. *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016).

## III. Analysis

The parties do not dispute the details of the 1998 sale of the plane from Martin to Plaintiff. R. PSOF ¶ 1; [55-8]. Instead, Defendant's challenge to Plaintiff's ownership rests solely upon his allegations in the conversion counterclaim that Martin stole the plane from Defendant in or around 1984, and that Plaintiff was thus complicit in Martin's efforts to "wash" the plane's title through the 1998 sale (which Defendant construes as a second conversion by Plaintiff). [14] at 14-21. That second conversion theory, however, remains contingent upon Martin's initial theft, because Defendant challenges Plaintiff's

7

ownership on the grounds that Martin—having converted the plane—was incapable of conveying lawful title. *Id.* ¶ 32. Likewise, Defendant's counterclaim for declaratory judgment remains based upon Martin's alleged theft, and does not offer any independent grounds for relief. *Id.* at 21–22.

Initially, this Court must address whether the statute of limitations bars Defendant's counterclaims. If Defendant's claims are time-barred, then this Court must grant Plaintiff summary judgment because Defendant would lack any legal basis to challenge Plaintiff's title to the plane. This Court first considers the conversion counterclaim, and then the counterclaim for declaratory judgment.

### A. Statute of Limitations Bars Defendant's Conversion Counterclaim

#### 1. Discovery Rule

In diversity cases like this one, federal courts apply the statute of limitations arising from the forum state. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004). Illinois law applies the statute of limitations of the forum state of the action, meaning that Illinois' statute of limitations applies here. *Id.* (citing *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 194 (Ill. 2002)). Illinois imposes a five-year limitations period on conversion claims. 735 ILCS 5/13-205.

Under Illinois law, however, the "discovery rule" may toll the limitations periods for certain causes of action, delaying the start of the limitations period until the injured party "knows or reasonably should know" of the wrongful injury. *DuPage County v. Graham, Anderson, Probst & White*, 485 N.E.2d 1076, 1080 (Ill. 1985) (internal quotation marks omitted). The rule "typically applies in cases

where the relationship between the injury and the alleged wrongful conduct is obscure." *Newell v. Newell*, 942 N.E.2d 776, 781 (Ill. App. Ct. 2011). The Illinois Supreme Court has not determined whether the discovery rule applies to common law conversion claims, *see Nelson v. Sotheby's, Inc.*, 115 F. Supp. 2d 925, 929 (N.D. Ill. 2000), but has stated that courts should look at "whether the underlying facts support application of the discovery rule," *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1136 (Ill. 1995). Based upon the record here, including the fact that Defendant lived across the country from his plane and acted through intermediaries, this Court applies the discovery rule to his conversion counterclaim. This determination accords with Illinois appellate court decisions that have also applied the rule to conversion claims. *See, e.g.*, *Bilut v. Nw. Univ.*, 692 N.E.2d 1327, 1333–34 (Ill. App. Ct. 1999); *see also Lerman v. Turner*, No. 10-cv-2169, 2013 WL 4495245 (N.D. Ill. Aug. 21, 2013) (collecting cases).

Consequently, the five-year statute of limitations on Defendant's conversion claim began to run when Defendant: (1) knew or reasonably should have known of his injury; and (2) knew or reasonably should have known that it was wrongfully caused. *See DuPage County*, 485 N.E.2d at 1080. In other words, if Defendant knew or should have known that he was wrongfully injured before December 22, 2011—five years before he filed his counterclaim—his claim for conversion remains time-barred under the Illinois discovery rule. *See id.*; [14] at 1.

Based upon the undisputed portions of the record here, Defendant clearly knew he was injured when he discovered that his plane had disappeared in early

9

1985. [55-1] at 30. The question, then, is when Defendant knew or reasonably should have known that his injury was wrongfully caused. A person knows that an injury "is wrongfully caused when they possess enough information about the injury to alert a reasonable person to the need for further inquiries to determine if the cause of injury is actionable at law." *LaSalle Bank v. Skidmore, Owens & Merrill*, 635 N.E.2d 564, 567 (Ill. App. Ct. 1994). An injured party, however, need not have all the facts required to allege a cause of action for the statute of limitations to be triggered. *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 980 (Ill. 1981). Rather, the "discovery date" is determined by examining when a person exercising reasonable diligence would be alerted to the possibility that he had been injured unlawfully. *See LaSalle*, 635 N.E.2d at 567; *Newell*, 942 N.E.2d at 781. While often a fact-driven inquiry, this discovery date can be determined at summary judgment if the facts known by the injured party "are not in dispute, and only one conclusion can be drawn from them." *LaSalle*, 635 N.E.2d at 567.

Here, whether the alleged conversion occurred in 1985—when Martin removed Defendant's plane or its parts from the hangar in New York—or in 1998—when Greenhill purchased the plane—Defendant had sufficient information to pursue his claim well before December 2011. By 1985, Defendant knew that Martin had removed the New York plane without permission. Defendant further knew that Martin retained possession of his plane (or its parts), and knew that Martin was based in Palos Park, Illinois. Defendant also knew Martin's business address in Chicago. PSOF ¶¶ 3–7; [55-1] at 24, 26, 30; [55-6] ¶ 9. Moreover, Defendant

10

retained a private lawyer and reached out to law enforcement as early as 1985, clearly establishing that he was aware he might have a claim, even if he chose not to pursue it. Defendant argues that while he believed Martin had his plane, he lacked "direct personal knowledge" that Martin "actually" possessed it. *See, e.g.*, R. PSOF ¶ 4. No such knowledge, however, is required by the discovery rule. The rule asks only whether a reasonable person in Defendant's position would have been on inquiry notice about a potential cause of action. Under the facts here, any reasonable person, finding their property gone and knowing it to be in someone else's possession, had such notice. *See Nelson*, 115 F. Supp. 2d at 930 (under Illinois law, plaintiff had sufficient knowledge to trigger limitations period when he allegedly owned a painting; knew it was held by Sotheby's without his permission; and unsuccessfully demanded its return).

Turning to the 1998 sale, Defendant knew from reading the 2002 *Air Classics* article that Plaintiff possessed, by way of Martin, a plane connected with his lost plane's serial number (44-74543). [55-1] at 39, 41; [55-11]. Shortly thereafter, Defendant reached out to Bob Guilford, and another lawyer, David Bonar, who obtained the FAA file on Plaintiff's plane. PSOF ¶ 22. At this point, nothing prevented Defendant from obtaining additional FAA files relating to the two serial numbers implicated—the New York plane's old 44-74543 number and Plaintiff's 44-63655 registration—or, indeed, any of the information Defendant later obtained from the RCAF and the U.S. Department of the Air Force. *See* [64] at 14–15. At any rate, Defendant possessed sufficient information for Bonar to draw up a

11

complaint—alleging conversion, among other counts—in 2004, though this too went unpursued. PSOF ¶¶ 21-27; [55-13]. Few proofs could better show a party's knowledge of a claim than the fact that the claim was prepared for filing.

Finally, Defendant's 2009 letter to U.S. Attorney Fitzpatrick lays out all the elements of Martin's alleged scheme and Plaintiff's alleged complicity. [55-15]. It sets out in detail the path of s/n 44-63655 from the crash in Nicaragua to the alleged washing of the New York plane's title. *Id.* Because the discovery rule only requires notice of a potential claim rather than proof, *see Knox*, 430 N.E.2d at 980–81, Defendant's 2013 discovery of additional documents tracing the history of s/n 44-63655 fails to delay the running of the statute of limitations. By 2009, Defendant knew the basis for his potential causes of action; since the discovery rule only requires a party to have "sufficient information concerning his injury and its cause to put a reasonable person" on inquiry notice that he might have a cause of action, Defendant's knowledge triggered the five-year statute of limitations. *Id.* Because "the record shows as a matter of law" that Defendant had notice that his injury was caused by "wrongful acts" and thereafter failed to act within the applicable statute of limitations, this Court finds that his conversion claim is time-barred. *Courtney v. Searle Pharm., Inc.*, 208 Ill. App. Ct. 413, 416 (Ill. App. Ct. 1990).

### 2. Continuing Violation Rule

In an attempt to avoid the statute of limitations, Defendant invokes the continuing violation doctrine. The continuing violation doctrine tolls the limitations period for claims based upon a "continuing course" of wrongful conduct. *Belleville Toyota*, 770 N.E.2d at 190. Specifically, the doctrine delays the date of the claim's

accrual until "the date of the last injury or the date the tortious acts cease." *Id*. But this rule only applies to injuries that result from "cumulative or aggregate" conduct—in other words, it applies to "continuing unlawful acts and conduct," rather than the "continual ill effects from an initial violation." *Mauer v. Rubin*, 926 N.E.2d 947, 957 (Ill. App. Ct. 2010). It does not apply to discrete acts that support causes of action independently. *See Belleville Toyota*, 770 N.E.2d at 192–93.

Here, Defendant's claim for conversion presents just such a discrete action. Whether the alleged conversion arises from the 1984 taking of the New York plane or the 1998 sale of the plane to Plaintiff, each event constitutes a distinct act that—if wrongful—would support an independent cause of action. That is enough to bar the application of the continuing violation doctrine. *See id.* (continuing violation doctrine did not apply where each of the distributor's vehicle allocations among franchisees was unlawful in itself); *see also Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005) (applying Illinois law, repeated conversions of checks did not constitute cumulative conduct but a "series of discrete acts" to which the continuing violation rule was inapplicable).

Because the continuing violation rule does not apply, the accrual of Defendant's counterclaim for conversion was not tolled, and the claim remains time-barred under the discovery rule, as discussed above.

### B. Statute of Limitations Bars Defendant's Counterclaim for Declaratory Judgment

If Illinois law time bars Defendant's declaratory judgment claim, then he has no further grounds upon which to challenge Plaintiff's title to the plane. Although

13

the federal declaratory judgment statute does not contain a statute of limitations, every federal appellate court to address the issue has held that a claim for declaratory judgment remains barred to the same extent that a time bar applies to the underlying claim for substantive relief. *See Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178, 181–85 (3d Cir. 1997); *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 667–68 (6th Cir. 1997); *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688–89 (9th Cir. 1993); *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992); *Gilbert v. City of Cambridge*, 932 F.2d 51, 57–58 (1st Cir. 1991); *Clulow v. Oklahoma*, 700 F.2d 1291, 1302 (10th Cir. 1983) (overruled on other grounds).

The Seventh Circuit has not addressed the issue, but other district courts in this circuit have also applied the statute of limitations for the underlying cause of action to claims for declaratory judgment. *See Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1013–14 (N.D. Ill. 2010); *Morris v. Mfrs. Life Ins. Co.*, No. EV 95-142-CH/H, 1997 WL 534156, at *10 (S.D. Ind. Aug. 6, 1997); *see also Benitez v. Clark*, No. 86-c-9480, 1987 WL 14613, at *3 n.3, *aff'd*, 863 F.2d 885 (7th Cir. 1988).[2]

The reasoning of these district and appellate courts persuades this Court. To prevent parties from "making a mockery of the statute of limitations by the simple expedient of creative labeling," courts must "focus upon the substance of an asserted claim as opposed to its form." *Gilbert*, 932 F.2d at 57–58 (citing *Cope v. Anderson*, 331 U.S. 461, 464 (1947) and *Russell v. Todd*, 309 U.S. 280, 289 (1940)). Thus, if "a

---

[2] The one court that did not apply the statute of limitations in such circumstances did not actually reach the issue. *See Deininger v. Deininger*, No. 88-c-0395, 1989 WL 65193, at *7 (N.D. Ill. June 9, 1989) (declining to exercise jurisdiction over claim for declaratory judgment).

14

claim for declaratory relief could have been resolved through another form of action which has a specific limitations period," or parallels a claim for legal relief, the limitations period applicable to the legal or substantive claim governs the declaratory relief claim. *Id.*

An exception to this rule applies where the declaratory relief sought is "offered as a defense to a still viable claim." *See Rymer Foods, Inc. v. Morey Fish Co.*, No. 94-c-1239, 1995 WL 548595, at *2 (N.D. Ill. Sept. 13, 1995) (citing *Seaboard Coast Line R. Co. v. Long Island R. Co.*, 595 F.2d 96, 101 (2d Cir. 1979) (statutes of limitations do not apply to defenses)). But where the claim for declaratory relief seeks "affirmative" or "coercive" relief, it "cannot avoid the bar of the statute of limitations." *Morris*, 1997 WL 534156, at *10.

Here, Defendant's declaratory judgment claim constitutes an action for affirmative, coercive relief. It seeks the surrender and return of the P-51D Mustang currently in Plaintiff's possession. [14] at 22. As such, Defendant does not offer it as a defense but as an independent counterclaim. *Id.*

Moreover, despite Defendant's assertions, his declaratory judgment claim cannot be "based on" Defendant's substantial truth defense. [64] at 17. Substantial truth is a defense to defamation, *see, e.g.*, *Harrison v. Chi. Sun-Times*, 793 N.E.2d 760, 766 (Ill. App. Ct. 2003), and that defense corresponded to Plaintiff's defamation claim, which Plaintiff voluntarily dismissed, [51, 59]. Defendant's declaratory judgment claim instead rests upon the same allegations underlying his conversion counterclaim. [14] at 21–22. Where, as here, a party's declaratory judgment action

is a "mere re-labelling" of the party's "claims for coercive relief," the declaratory judgment action is time-barred if the claim for coercive relief is time-barred. *Ottaviano*, 701 F. Supp. 2d at 1013–14. Therefore, because Illinois law time bars Defendant's conversion counterclaim, his action for declaratory relief is likewise barred.

### C. Plaintiff is Entitled to Summary Judgment

Defendant's counterclaims challenging Plaintiff's title to the plane on the basis of Martin's alleged theft are the only grounds offered against Plaintiff's otherwise lawful title. Because those claims are time-barred as a matter of law, there is no remaining dispute over Plaintiff's valid purchase of the plane. Consequently, the record contains no "genuine issue for trial, and summary judgment is appropriate." *A&M Records, Inc. v. A.L.W., Ltd.*, 855 F.2d 368, 372 (7th Cir. 1988) (affirming grant of summary judgment upon dismissal of opponent's counterclaims).

### IV. Conclusion

Plaintiff's motion for summary judgment [54] is granted. Judgment is entered in favor of Plaintiff and against Defendant on Plaintiff's complaint for declaratory relief [1], and on Defendant's counterclaims for conversion and declaratory relief [14].

Dated: November 13, 2017

Entered:

_/s/ John Robert Blakey_
John Robert Blakey
United States District Judge